```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
DEVON THOMAS,                            :       18cv2781(DLC)
                      Plaintiff,         :
          -v-                            :       OPINION AND ORDER
                                         :
THE CITY OF NEW YORK, THE NEW YORK       :
CITY POLICE DEPARTMENT, THE NEW YORK     :
CITY POLICE DEPARTMENT LICENSE           :
DIVISION, JAMES P. O'NEILL, Police       :
Commissioner of the City of New York,    :
JONATHAN DAVID, Director of the New      :
York City Police Department License      :
Division, and Detective JOSEPH COOK      :
(Shield No. 6694),                       :
                      Defendants.        :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:
Cindy N. Brown
Peter H. Tilem
188 East Post Road, 3rd Floor
White Plains, New York 10601

For the defendants:
Zachary W. Carter
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007

Sheryl Neufeld
Mark Muschenheim
Darren Trotter,
of counsel

DENISE COTE, District Judge:

    Plaintiff Devon Thomas ("Thomas") alleges that his two handgun licenses were revoked in violation of the Equal Protection and Due Process Clauses of the U.S. Constitution.

The defendants have moved to dismiss the first amended complaint ("FAC"). For the reasons that follow, the motion is granted.

## Background

The following facts are drawn from the FAC and attached supporting documents. Thomas is an African-American male who has a history of dismissed arrests. He was arrested in 1999 and 2008 by defendant New York City Police Department ("NYPD"), and in 2011 in Nassau County. All three of his arrests were dismissed and sealed, and Thomas was paid substantial sums by the NYPD to settle false arrest claims arising from the 1999 and 2008 arrests.

In 2013, Thomas was issued two handgun licenses -- a Restricted Concealed Carry Guard license and a Gun Custodian license -- by defendant NYPD License Division ("the License Division"), in connection with his work as a security guard. Information about his past arrests was available to the License Division and appears to have been considered by the License Division before Thomas's license applications were approved.

On June 20, 2014, Thomas was observed by NYPD officers at a political rally with his firearm exposed in a holster outside his clothing. He was wearing cargo pants and a tee shirt with no visible insignia identifying him as a security guard. The officers advised him not to display his firearm. The terms of

Thomas's Restricted Concealed Carry handgun license required that the firearm was to be carried concealed and not visible to the public.  This restriction is, however, not typically enforced when a legally armed guard is on duty in full uniform with his or her firearm carried in a holster worn as part of that uniform.  These details were reported to the License Division's Incident Unit, and an investigation was commenced, but no action was taken as a direct result of this incident ("the 2014 incident").

On April 21, 2016, Thomas was observed in the NYPD's 25th Precinct with his firearm again exposed outside his clothing.  He later testified that he had gone to the 25th Precinct after work to visit a friend who was retiring.  Thomas's Restricted Concealed Carry Guard license is restricted to the days and hours that he is actually engaged in employment as a security guard and travel between work and his residence.  This incident ("the 2016 incident") was reported to the Incident Unit and an investigation was undertaken.

On May 2, 2016, the License Division sent Thomas a suspension notice which directed him to surrender his firearms and forward his licenses to the License Division Incident Section.  Thomas did not voucher his firearm until July 12, 2016.  On September 1, 2016, the License Division issued a Notice of Determination informing Thomas that both of his

licenses were revoked due to: 1) "The facts and circumstances surrounding your incident on 4/21/16 for failure to follow rules of the License Division (Title 38);" 2) "Failure to notify the License Division that you were the recipient of a criminal court summons and that an order of protection was issued against you;" 3) "Your history of arrests and incidents;" and 4) "Your failure to abide by the Rules and Regulations governing your firearms licenses."

Thomas appealed, and on February 1, 2017, he was issued a notice that a hearing would be held on his appeal on February 15, 2017. That notice informed Thomas: "On the scheduled hearing date you must be prepared to present all the relevant information, documentation, and witnesses necessary to support your case." A hearing was held on February 15, and on October 30, 2017, the License Division issued a Final Agency Determination informing Thomas that his licenses were revoked. The hearing report attached to the Final Agency Determination cited his failure to voucher his firearms at his local precinct after being directed in writing to do so "immediately" on May 2, 2016; his violation of the major restrictions of his Carry Guard permit; his failure to inform the License Division that he had been the subject of an Order of Protection; and his deliberately false testimony at the hearing. The hearing officer specifically stated in her report that she "ma[d]e no finding

4

about the 1999, 2008, and 2011 arrests." She further noted that "such information of these arrests as was available in the License Division files in 2013 appears to have been carefully considered by the License Division director, who approved the issuance of Mr. Thomas' current CG permit after appeal."

Thomas filed his initial complaint in this action on March 29, 2018. Defendants moved to dismiss that complaint on June 8, 2018. On June 29, 2018, Thomas filed the FAC. Defendants' renewed motion to dismiss was filed on July 20, 2018, and became fully submitted on August 10.

In his FAC, Thomas asserts claims arising under the Second and Fourteenth Amendments, Sections 1981 and 1983 of Title 42 of the United States Code, and Title VI of the Civil Rights Act. He principally alleges that the License Division has a "policy" of considering dismissed arrests in making handgun license determinations, that this policy disproportionately impacts African Americans because they are statistically more likely to have dismissed arrests, and that the policy is a result of intentional discrimination against African Americans in violation of the Equal Protection Clause of the Fourteenth Amendment.

Thomas further alleges that the notice and hearing he received with respect to the License Division's revocation of his handgun licenses did not comport with constitutional

5

procedural due process standards. Specifically, he alleges that the September 1, 2016 Notice of Determination -- which listed the four grounds supporting the license revocations -- did not adequately apprise him of the grounds that the License Division would ultimately rely upon in revoking his licenses, and that the February 1, 2017 hearing notice did not adequately apprise him that he would bear the burden at the hearing of proving that his licenses should not be revoked.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cohen v. Rosicki, Rosicki & Assocs., 897 F.3d 75, 80 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted). A court "must accept as true all of the allegations contained in a complaint, though threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017) (citation omitted).

### I. Thomas's Equal Protection Claims

"To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause and/or § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent." Burgis v. New York City Dept. of Sanitation, 798 F.3d 63, 68 (2d Cir. 2018). Discriminatory intent need not be the only motivation for the defendants' conduct. "A plaintiff can establish a prima facie case of disparate treatment by showing that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." Mhany Management, Inc. v. County of Nassau, 819 F.3d 581, 606 (2d Cir. 2016) (citation omitted). Discriminatory intent may be inferred from statistical evidence, but to show discriminatory intent in an "Equal Protection case based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they also must be of a level that makes other plausible non-discriminatory explanations very unlikely." Burgis, 798 F.3d at 69.

As an initial matter, Thomas has not plausibly plead that his dismissed arrests had any bearing on the License Division's final decision after appeal. In the hearing report accompanying

7

the Final Agency Determination, which Thomas attached to his complaint, the hearing officer specifically stated that she was not relying on the arrests in making her decision and that, indeed, the License Division was aware of the arrests when Thomas first applied for his licenses and those licenses were issued.

The complaint does allege, however, that the dismissed arrests were considered in the initial revocation decision communicated in the Notice of Determination of September 1, 2016. Even if it were relevant to consider this allegation about an intermediate decision, Thomas has failed to plausibly allege a violation of the Equal Protection Clause. His disparate impact claim fails because he does not plausibly allege that the License Division acted with discriminatory intent. Thomas relies on broad, conclusory allegations of intent for which he has plead no factual support. In his complaint, Thomas alleges that his "race was a motivating factor" in the License Division's decision, that the License Division acted "with the purpose of depriving Plaintiff of the equal protection and benefits of the law," and that the License Division's policy of considering dismissed arrests "allows Defendants to intentionally discriminate against African-American applicants." Each of these are conclusory statements that fall short of Thomas' pleading burden.

In support of his allegations of intentional discrimination, Thomas additionally states in his complaint that African-American handgun license applicants "are intentionally discriminated against because African-Americans have a greater number of arrests dismissed by percentage than Caucasians." The fact of disparate impact cannot on its own establish discriminatory intent. This is not the sort of statistical evidence of discriminatory intent that "makes other plausible non-discriminatory explanations very unlikely." Burgis, 798 F.3d at 69. Thomas also cites the long history of racism in the United States, going back as far as Dred Scott v. Sanford. This has no bearing on whether these particular defendants acted with discriminatory intent on this particular occasion. Finally, he cites to specific instances of corruption within the NYPD as evidence of the License Division's bad faith. Again, these general allegations offer no indication that the License Division or any other defendant acted with racially discriminatory animus in revoking Thomas's handgun licenses or in creating a "policy" of considering dismissed arrests.[1] In

---

[1] It is also unclear, based upon the information contained in the FAC, whether a "policy" of considering arrests exists. In support of this allegation, Thomas cites only one example of an African-American whose handgun license application was denied in part because of his history of dismissed arrests. But even if the License Division does have such a policy, Thomas has not plausibly alleged that it developed that policy as a result of discriminatory animus.

short, Thomas has failed to "specifically allege . . . circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994).

**II. Thomas's Due Process Claim**

Thomas's procedural due process claim is predicated upon insufficient notice.[2]  "The touchstone of due process . . . is the requirement that a person in jeopardy of serious loss be given notice of the case against him and the opportunity to meet it." Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (citation omitted).  The notice must describe the misconduct with sufficient particularity.  Id. at 172.

> The particularity with which alleged misconduct must be described varies with the facts and circumstances of the individual case; however, due process notice contemplates specifications of acts or patterns of conduct, not general, conclusory charges unsupported by specific factual allegations.

Id.

Thomas alleges that he did not have adequate notice before the hearing of the grounds on which the hearing officer would ultimately recommend that his license be revoked.  Specifically,

---

[2] Thomas, in his opposition to the motion to dismiss, additionally predicates his due process claim on undue delay. He does not plead this in the FAC, and it is not appropriately considered at this stage.

10

he alleges that he had no notice that he was charged with 1) engaging in a pattern of violating the restrictions of his license, 2) failing to voucher his firearm when directed, and 3) providing false testimony in the hearing. The hearing officer, he argues, was thus precluded from relying on these grounds in making her recommendation. But the Notice of Determination from which Thomas appealed does apprise him that his license was revoked due to "the facts and circumstances surrounding your incident on 4/21/2016 for failure to follow rules of the License Division," "your history of . . . incidents," and "your failure to abide by the Rules and Regulations governing your firearms licenses." He was thus adequately apprised before the hearing of the factual circumstances that precipitated the License Division's decision to revoke his licenses. It was, of course, impossible to give him advance notice that the hearing officer would find his hearing testimony to be false.

Thomas also alleges that he was not notified that he would bear the burden at the hearing of proving that his licenses should not be revoked. But the hearing notice that was issued on February 1, 2017, specifically stated: "On the scheduled hearing date you must be prepared to present all the relevant information, documentation, and witnesses necessary to support you case." Moreover, Thomas was represented by counsel at the administrative hearing, and it is well-established New York law

11

that the burden of proof in an administrative hearing is on the party who initiated the proceeding. See N.Y. A.P.A. § 306.

Thomas's reliance on Spinelli, 579 F.3d 160, is misplaced. In that case, as here, the regulations provided that a license suspension "will result in the issuance of a Notice of Determination Letter to the licensee, which shall state in brief the grounds for the suspension or revocation and notify the licensee of the opportunity for a hearing." Id. at 172 (citing 38 R.C.N.Y. § 1-04(f)). The Second Circuit found that this requirement had not been complied with, and the notice provided to the licensee was constitutionally inadequate. The court specifically noted that, "[h]ad this regulation been complied with, the notice might have been sufficient, depending on the specificity of the grounds provided and the promptness of the hearing." Id. Thomas does not contend that the License Division failed to comply with the notification requirements set forth in the Rules of the City of New York, and indeed the Notice of Determination that he received pursuant to the regulation is attached to his complaint. See 38 R.C.N.Y. § 5-30(h) ("If her/his license is suspended or revoked, the licensee shall be issued a written Notice of Determination Letter, which shall state in brief the grounds for the suspension or revocation of the license and notify the licensee of the opportunity for a hearing.")

Additionally, as of the filing of this action, Thomas was awaiting the outcome of an administrative appeal under Article 78 of the New York Civil Practice Law. The Second Circuit has "held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy . . . ." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996) (collecting cases). While "[p]laintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies," Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006), the availability of an Article 78 proceeding to correct any alleged procedural errors is fatal to Thomas's procedural due process claim.

**III. Thomas's Second Amendment Claim**

In his opposition to this motion to dismiss, Thomas cites out of circuit precedent for the proposition that the Second Amendment protects a right to carry a handgun outside the home. Even if that precedent were binding on this Court, Thomas's FAC does not challenge the constitutionality of the New York State and New York City laws governing the issuance of his handgun license, and that issue is not appropriately raised at this stage.

## **Conclusion**

The defendants' July 20, 2018 motion to dismiss the FAC is granted. The Clerk of Court is directed to enter judgment for the defendants and to close this case.

SO ORDERED:

Dated: New York, New York
October 24, 2018

```
                              _____
                                      DENISE COTE
                              United States District Judge
```